UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

INNOVATIVE CUSTOM BRANDS INTL., INC.,

                Civil Action No. 04 CV 2937 (RJH)

               Plaintiff,

          - against -

SOLE CITY, INC., SOLOMON SAFDEYE,
ALAN KANDALL, JEFFREY BERNSTEIN and
MARC DOLCE,
               Defendants.
------------------------------------------------------------------x

**MEMORANDUM OF LAW OF PLAINTIFF
INNOVATIVE CUSTOM BRANDS INTL., INC.
IN OPPOSITION TO MOTION TO DISMISS
THE COMPLAINT OF DEFENDANTS SOLE CITY, INC.
AND SOLOMON SAFDEYE,
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Ira S. Sacks (IS 2861)
Esther S. Trakinski (ET 7791)
GURSKY & PARTNERS, LLP
1350 Broadway, 11th Floor
New York, New York 10018
(212) 904-1234

Attorneys for Plaintiff
Innovative Custom Brand Intl., Inc.

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................I-II

TABLE OF AUTHORITIES ..................................................................................III - IV

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS .................................................................................................3

    The Parties .....................................................................................................................3

    The TROOP License.......................................................................................................3

    Defendants' Multiple Breaches of the TROOP
    License and Willful Trademark Violations .................................................................4

    Defendants' Fraud And Negligent Misrepresentations................................................5

    The Ludacris Contract....................................................................................................6

ARGUMENT

    I.    THE COMPLAINT SUFFICIENTLY STATES
        CLAIMS UNDER THE LANHAM ACT ......................................................8

        A.  The Standard for Defeating a Motion to Dismiss ...................................8

        B.  The Complaint States Claims for Trademark
            Infringement and False Designation of Origin ........................................9

            1.  Applicable Law................................................................................9

            2.  The Allegations of the Complaint Sufficiently
                  State Claims for Trademark Infringement and
                  False Designation of Origin ...............................................12

        C.  Defendants' Reliance on the Genuine Goods
            Doctrine and First Sale Rule is Misplaced...............................................13

            1.  The Genuine Goods/First Sale Doctrine .........................................14

            2.  None of the Cases Cited by Defendant
                 Is Apposite .................................................................15

D.  The Third Claim for Relief States a Claim
    For False Advertising..........................................................................18

II.    THIS COURT HAS SUPPLEMENTAL
       JURISDICTION UNDER 28 USC §1367(a) ...............................................20

CONCLUSION...........................................................................................................21

ICB US (Opp to Motion to Dismiss)

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. National Video, Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985)..................................... 9

*Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003)................... 8

*Baskin-Robbins Ice Cream Co, v. D&L Ice Cream Co.*,
   576 F.Supp 1055 (E.D.N.Y. 1983)). ............................................................... 16

*Baumar Inst. Corp. v. Continental Microsystems, Inc.,* 497 F. Supp 947, 955, 957
   (S.D.N.Y. 1980)................................................................................. 11, 13

*Bowmar Instrument Corp v. Continental Microsystems, Inc.*, 497 F. Supp. 947, 955
   (S.D.N.Y. 1980)...............................................................................9, 15, 18-19

*Byron Lars Duck, Ink. v. San Siro, Inc.*, 1997 U.S. Dist. LEXIS 9398 (S.D.N.Y. 1997). 16

*Church of Scientology International v. Elmira Mission of the Church of Scientology*
   794 F. 2d 38 (2d Cir. 1986) .......................................................9-10, 12, 19

*Conley v. Gibson,* 355 U.S. 41 (1957) ............................................................... 8

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
   604 F.2d 200 (2d Cir. 1979) ..................................................................... 10, 19

*Dynamic Microprocessor Assoc., Inc. v. EKD Computer Sales & Supplies Corp.*, 1997
   WL 231496, (E.D.N.Y. Apr. 14, 1997) ............................................................ 11

*El Greco Leather Prods. Co. v. Shoe World, Inc.*, 306 F.2d 392, (2d Civ 1986)........ 11-12

*Geisel v. Poyntex Products, Inc.* 283 F. Supp. 261, 266 (S.D. N.Y. 1, 968) ................ 9, 11

*Geisler v. Petrocelli,* 616 F.2d 636 (2d Cir. 1980) ............................................ 8

*Hishon v. King & Spalding,* 467 U.S. 69 (1984) ................................................. 8

*LaBounty v. Adler*, 933 F.2d 121 (2d Cir. 1991); ............................................. 8

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995)............................................. 19

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*

ICB US (Opp to Motion to Dismiss)

979 F. Supp. 224 (S.D.N.Y. 1997)............................................................................ 14, 15

*Mastercard International Inc, v. Sprint Communications Co.*,
  1994 WL 97097 (S.D.N.Y. Mar. 23, 1994) .................................................. 10

Oleg Cassini, Inc. v. Couture Coordinates, Inc.,
  297 F. Supp. 821 (S.D.N.Y. 1969) ............................................................. 11

*Osawa & Co. v. B&H Photo*, 589 F.Supp. 1163 (S.D.N.Y. 1984)).................................. 14

*Papasan v. Allain,* 478 U.S. 265 (1986) .......................................................................... 8

Rogers v. HSN Direct Joint Venture, 1999 U.S. Dist.
  LEXIS 14392 (S.D.N.Y. 1999)...................................................... 13, n. 12

*Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000)................................ 7

*Sasson Jeans, Inc. v. Sasson Jeans, L.A., Inc.*, 632 F.Supp. 1525 (S.D.N.Y. 1986) ........ 16

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ......................................................................... 8

*Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981).................................. 10

**Statutes**

15 U.S.C. § 1051 ............................................................................................................ 1, 9

15 U.S.C. §1125(a) ............................................................................................................ 17

28 U.S.C. §1367 ................................................................................................................ 20

**Other Authorities**

1999 WL 728651 at 2 ........................................................................................................ 16

3 Louis Altman & Rudolf Callmann, *Callmann on Unfair Competition,*

  *Trademarks and Monopolies* § 20:59 (4th ed. 2004).................................................... 11

*4J.  McCarthy on Trademarks and Unfair Competition* §25:31 (4th ed. 2004 ................ 11

*Rogers* v. HSN Direct Joint Venture 1999 WL 728651 at 2 (S.D.N.Y. 1999)................ 17

4

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................. 8

Fed. R. Civ. P. 12(c) ........................................................................... 10, n.108

ICB US (Opp to Motion to Dismiss)

Plaintiff Innovative Custom Brand Intl., Inc. ("Plaintiff") submits this memorandum of law in opposition to the motion made by defendants Sole City, Inc. ("Sole City") and Solomon Safdeye ("Safdeye")[1] to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, the owner of the valuable TROOP trademark, asserts claims for trademark infringement, false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), as well as various state law claims, including claims for breach of contract and unjust enrichment.  Plaintiffs' claims arise out of  Defendants' wrongful conduct in (i) violating Plaintiff's federal and common law trademark rights; (ii) numerous breaches of two agreements; and (iii) making material misrepresentations to Plaintiff which were intended to, and did, induce Plaintiff to forestall action to collect monies owed to it at a time when the company was still solvent[2], to terminate the license agreement between Plaintiff and Defendant Sole City (the "TROOP License"), and to support a business arrangement between Sole City and a third party.

---

[1]   The motion was originally also made on behalf of Defendant Alan Kandall.  However, since the filing of the motion, the claims against Mr. Kandall have been dismissed without prejudice.  Similarly, the claims for fraud and negligent misrepresentation against Defendant Sole City and Safdeye, which were also a subject of the instant motion, have been dismissed without prejudice.

[2]   We have been advised by Defendants that since this action and its companion case *Full Creative Limited Inc, d/b/a I.C.B. Asia, Co., Ltd. v. Sole City, Inc., et al.*, No. 04 CV 2907 (the "Asia Action") were filed, Soul City has ceased doing business, fired all of its employees, and commenced liquidating all of its inventory.  Defendants now claim that Sole City is insolvent.

ICB US (Opp to Motion to Dismiss)

In their motion, Defendants argue that because the First through Third Claims (the only federal law claims asserted in the Complaint) fail to state any cause of action under the Lanham Act, the entire action must be dismissed for lack of supplemental jurisdiction.  However, as demonstrated below, each of these claims properly pleads a Lanham Act claim arising out of Defendants' continued use of the TROOP trademarks after the TROOP License was terminated.  Accordingly Defendants' motion should be denied in its entirety, and this Court may and should exercise supplemental jurisdiction over the remaining state law claims.

ICB US (Opp to Motion to Dismiss)

## STATEMENT OF FACTS

### The Parties

Plaintiff designs, manufactures and sells footwear bearing various trademarks owned by third parties. (Complaint ¶ 4) In addition, Plaintiff owns the word mark TROOP and various stylized marks incorporating the TROOP mark (collectively the "TROOP Trademarks").[3] Plaintiff and its predecessor trademark owners have been marketing products bearing the TROOP Trademarks since 1986. (Complaint ¶ 10)

Defendant Sole City also of manufactures and sells branded footwear to national and regional retailers throughout the United States and Canada. (Complaint ¶ 5) Defendant Safdeye is President and sole shareholder of Sole City. (Complaint ¶¶ 6-7)

### The TROOP License

On September 1, 2002, Plaintiff and Sole City entered into the TROOP License pursuant to which Sole City was granted an exclusive right to market, sell, and distribute footwear bearing the TROOP Trademarks in the United States (the Licensed Products"). (Complaint ¶ 12)

Between March and December 2003, Sole City ordered and accepted delivery from Full Creative, Ltd. d/b/a I.C.B. Asia Co., Ltd. ("ICB Asia"), the manufacturer designated by Plaintiff[4] of approximately 110,000 pairs of Licensed Product having an

---

[3]    The TROOP Trademarks include Registered Trademark Nos. 2,022,078 and 1,534,395, and are valid, subsisting, and in full force and effect. Registered Trademark No. 1,534,395 has achieved incontestable status pursuant to 15 U.S.C. § 1065. (Complaint ¶ 10).

[4]    Defendants are incorrect that Plaintiff manufactured the goods at issue and "affixed the TROOP trademark to the goods." (Defendants' Memo at 8)

ICB US (Opp to Motion to Dismiss)

invoice value in excess of $1,700,000.  Only a small portion of this amount has been

paid.[5]  (Complaint ¶ 15)

**Defendants' Multiple Breaches of the TROOP License
and Willful Trademark Violations**

As fully set forth in the Complaint, Sole City repeatedly breached the TROOP

License, which breaches eventually necessitated termination of the TROOP License.  For

example, Sole City breached Paragraph 3.1 in that it *never* made any royalty payments

during the life of the License.  (Complaint ¶ 19)  Sole City also breached Paragraphs 3.1

and 3.3, which require Sole City to submit reports to Plaintiff summarizing the sales and

shipments of Licensed Products and calculating sales royalties due on such sales in that it

never proffered a single report of any kind since the inception of the TROOP License and

ignored multiple written requests by ICB US for the sales information.  (Complaint ¶ 18).

Sole City also breached Paragraph 2.7 of the TROOP License, which permitted

Sole City to sell Licensed Product *only* to better quality retailers, and prohibited sales to

any to mass market or discount retailers.  To ensure compliance with this restriction,

Paragraph 2.7 required Sole City to submit to Plaintiff a list of all entities and retailers to

whom it *intended* to sell or ship Licensed Products *prior* to each season for Licensor's

review and approval.  Sole City never adhered to this procedure before the License was

terminated and, in fact, sold to numerous discount and/or mass merchandise

establishments. (Complaint ¶ 20)

---

[5]   To date, ICB Asia is owed approximately $1,300,000 for Licensed Products ordered and accepted by
Sole City, plus more than $60,000 for sample and production molds ICB Asia manufactured at
Defendants' behest. (Complaint ¶ 5).  The facts and circumstances relating to Sole City's failure to pay
amounts due is the subject of the companion case.

9

On the basis of these and other breaches of the TROOP License, Plaintiff terminated the TROOP License on March 24, 2004, pursuant to Section 10.1(a), (e), and (f).  (Complaint ¶ 23)  Defendants acknowledged the effectiveness of the License termination in writing on March 26, 2004.  (Complaint ¶ 17)

As alleged, however, despite being terminated as Licensee, Sole City has continued selling TROOP branded footwear to mass market and/or discount retailers (Complaint ¶ 21)[6], and has continued to advertise, offer for sale and/or sell products using the TROOP Trademarks, thereby infringing the TROOP Trademarks.[7]  (Complaint ¶ 17)

**Defendants' Fraud And Negligent Misrepresentations**

By late September 2003, Defendants had ordered and accepted delivery of Licensed Products having an invoice value of more than $800,000, but they had only paid for a small portion of those goods and had submitted no royalty reports, much less paid royalties.  Thus, beginning in late September and continuing through March 2004, Plaintiff, on its own behalf and on behalf of ICB Asia, made repeated requests of Defendants for payment of the outstanding monies.  (Complaint ¶¶ 24, 27, 42-43)  In response, and in order to induce Plaintiff to defer actions to collect what was owed to it, Safeye falsely represented to Plaintiff on numerous occasions that although he intended to pay Plaintiff and ICB Asia what Sole City owed, Sole City did not have the funds to do so.  (Complaint ¶¶ 26, 28-29, 32, 35-37, 41, 42, 88, 97)

---

[6]  For example, and by way of background for the Court, only, Plaintiff expects to develop evidence during discovery demonstrating that during the term of the License, and after it was terminated, Defendants routinely sold large quantities of Licensed Product for cash to discount wholesalers who then exported the goods to countries in the middle east.

[7]  For example, Sole City continues to flagrantly use the TROOP Trademarks on Sole City's website, even though it has *no authorization* to do so.

ICB US (Opp to Motion to Dismiss)

The fact is that Sole City did have sufficient capital in late 2003 to pay Plaintiff (Complaint ¶ 39) but chose instead to expend significant funds to expand its business, hire new executives, (Complaint ¶ 40), and pay for substantial personal expenses of Safdeye and his family members.  (Complaint ¶ 30)[8]

## The Ludacris Contract

In or about early September 2003, Defendants advised ICB that Sole City had entered into an agreement with the popular rap artist "Ludacris" for the use of the Ludacris name on TROOP branded footwear (the "Ludacris Project").  Defendants induced ICB to financially support the Ludacris Project by misrepresenting to ICB (a) that the Ludacris name was to be used exclusively on the Licensed Product (i.e., TROOP branded footwear) and in connection with the TROOP brand; and (b) that Defendants intended to work jointly and cooperatively with ICB to design and promote the new products.  (Complaint ¶ 45)

In late September 2003, in reliance on Defendants' false representations, Plaintiff delivered to Defendants $62,500, representing fifty percent of the Ludacris signing bonus (Complaint ¶ 47) and from that time forward expended significant resources working with Defendants to design the new product line and plan its promotion.[9]  (Complaint ¶¶ 48-50)

---

[8]  For example and by way of background for the Court, only, Plaintiff expects to develop evidence in discovery that Sole City expended hundreds of thousands of dollars a year to pay, among other things, (i) credit card bills for members of Safdeye's family, including $35,000 of charges Safdeye's daughter accumulated in a single month in late 2003; and (ii) that Sole City was paying substantial legal fees on Safdeye's behalf in connection with his protracted and acrimonious divorce.

[9]  ICB Asia also expended significant resources to design and product production molds for the new co-branded footwear, and to manufacture sample product to be delivered to Ludacris for his personal use none of which was paid for by Sole City.

ICB US (Opp to Motion to Dismiss)

On or about November 11, 2003, however, Defendants unilaterally (and without valid cause) terminated Plaintiff's role in the Ludacris Project and announced their intention to proceed with Ludacris branded footwear without the use of any of the TROOP Trademarks and without the Plaintiff's participation, and falsely promised to return in November the $62,500 Plaintiff had contributed to the Ludacris signing bonus. (Complaint ¶ 51)

## ARGUMENT

## I.

## THE COMPLAINT
## SUFFICIENTLY STATES
## CLAIMS UNDER THE LANHAM ACT

**A.**  **The Standard for Defeating a Motion to Dismiss**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283 (1986); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 614 (S.D.N.Y. 2003). As the Supreme Court has held, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The function of the trial court "is merely to assess the legal feasibility of the complaint, not to assess the evidence which might be offered in support thereof." *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 378 (S.D.N.Y. 2000) (*quoting Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980) Thus, the court may grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

As set forth below, the factual allegations of the Complaint in this action clearly are sufficient to sustain each cause of action asserted therein.

**B.    The Complaint States Claims for Trademark
         Infringement and False Designation of Origin**

**1.        Applicable Law**

"To make out a cause of action under the Lanham Act, a plaintiff must establish

three elements: 1) involvement of goods or services, 2) effect on interstate commerce,

and 3) a false designation of origin or false description of the goods or services." *Ryan,*

107 F. Supp. 2d at 379 (*quoting Allen v. National Video, Inc.*, 610 F. Supp. 612

(S.D.N.Y. 1985)).  These basic elements will establish claims for trademark infringement

(Claim I) as well as for false designation of origin (Claim II) and false advertising (Claim

III).  *See, e.g., Bowmar Instrument Corp. v. Continental Microsystems, Inc.,* 497 F. Supp

947, 955, 957 (S.D.N.Y. 1980) (trademark infringement and false advertising); *Geisel v.*

*Poynter Products, Inc.* 283 F. Supp. 261, 266 (S.D.N.Y. 1968) (false designation of

origin).  Defendants do not dispute that the allegations of the Complaint satisfy the first

two elements.  However, the sufficiency of the Complaint in pleading the third element,

*i.e.,* likelihood of confusion, is at issue.

In *Church of Scientology International v. Elmira Mission of the Church of*

*Scientology*, 794 F. 2d 38 (2d Cir. 1986), the Second Circuit addressed the likelihood of

confusion created when a former licensee continued to use a trademark even after

termination of its license to do so.  The Court held that a defendant's status as former

licensee actually

> increases the probability of consumer confusion.  A licensee . . . who once
> possessed authorization to use the trademarks of its licensor . . . becomes
> associated in the public's mind with the trademark holder.  When such party . . .
> loses its authorization yet continues to use the mark, the potential for consumer
> confusion is greater than in the case of a random infringer.  Consumers have

14

already associated some significant source identification with the licensor.  In this way the use of a mark by a former licensee confuses and defrauds the public.

794 F.2d 38, 44 (2d Cir. 1986).

In *Ryan*, 107 F. Supp. 2d 369, the defendant, also a former licensee, argued on a motion to dismiss the plaintiff's Lanham Act claims, that its sale of licensed goods after termination of the license agreement did not constitute trademark infringement since the products were "manufactured and sold exactly as they had been during the term of the Agreements" and purchasers would be getting exactly what they expected.  107 F.Supp.2d at 380. [10]  The court rejected this argument and held that:

> [Defendant] conveniently ignores that [the Lanham Act] by its very terms protects against confusion not only with respect to whether the goods are what they purport to be, but with respect to the origin, sponsorship, or approval of those goods by another person, in this case [defendant].  *See* 15 U.S.C. § 1125(a).  'The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."

*Id.* (*citing Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979)). S*ee also, Warner Bros., Inc. v. Gay Toys, Inc*., 658 F.2d 76, 79 (2d Cir. 1981) (confusion can be premised on likelihood that public will be misled into believing that the defendant is distributing products "vouched for" or sponsored by the plaintiff); *Mastercard International Inc, v. Sprint Communications Co.*, 1994 U.S. Dist. LEXIS 3398 at *11 (S.D.N.Y. Mar. 23, 1994) (Sprint's unauthorized use of World Cup marks on calling cards conveyed the false impression that such use was "officially sanctioned by the World Cup organization," thereby constituting a violation of the

---

[10]    In *Ryan* the defendant moved to dismiss under F.R.C.P 12(c).  However, the analysis of the pleadings under Rule 12(c) is the same as on a motion pursuant to Rule 12(b).  *See Ryan,* 107 F.Supp.2d at 378.

Lanham Act); *Geisel*, 283 F. Supp. at 267 ("a 'false representation', whether express or implied, that a product was authorized or approved by a particular person is actionable under Section 43(a)").

Thus, it has become hornbook law that once a trademark license has been properly terminated, the former licensee's continued advertising, offer for sale and sale of products bearing the previously licensed trademarks is actionable under the Lanham Act as trademark infringement and false designation of origin. *See, e.g.,* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §25:31 (4th ed. 2004) ("If, as a matter of contract law, a … trademark license has ended, the licensee has no right to continue use of the licensed marks. Any such use is without the trademark owner's consent and constitutes infringement"); 3 Louis Altman & Rudolf Callmann, *Callmann on Unfair Competition, Trademarks and Monopolies* § 20:59 (4th ed. 2004) ("when … [a] license agreement expire[s], or the licensee fail[s] to respect the conditions of the contract, … the licensee's right to the trademark also ends, and the mark reverts to the licensor. Thereafter, any subsequent use by the former licensee constitutes trademark infringement"). *See also Dynamic Microprocessor Associates, Inc. v. EKD Computer Sales & Supplies Corp.*, 1997 WL 231496, at *17-19 (E.D.N.Y. Apr. 14, 1997) (ex-licensee's continued distribution of product after termination of license violated Lanham Act); *Bowmar,* 497 F. Supp. 955 (use of trademark by ex-licensee after license was rightfully terminated established trademark infringement); *Oleg Cassini, Inc. v. Couture Coordinates, Inc.,* 297 F. Supp. 821, 821 (S.D.N.Y. 1969) ("any use of a trademark after expiration of a license is, of course, an infringement of the trademark"). *Cf. El Greco*

*Leather Prods. Co. v. Shoe World, Inc.*, 306 F.2d 392, 396 (2d Civ 1986) (having cancelled order for goods, trademark owner "entitled to assume that [manufacturer] would not dispose of the shoes without removing the CANDIE'S trademark.").

> **2.**     **The Allegations of the Complaint Sufficiently State Claims for Trademark Infringement and False Designation of Origin**

As noted, Defendants do not dispute that the Complaint sufficiently pleads the first two elements of Plaintiff's Lanham Act claims, namely that Plaintiff's claims involve goods sold in interstate commerce. As concerns the third element, while Defendants would have the Court conclude otherwise, the Complaint also sufficiently pleads likelihood of confusion.

Paragraph 17 of the Complaint expressly alleges that despite the termination of the TROOP License on March 24, 2004, Sole City continues to advertise, offer for sale and/or sell products using the TROOP Trademarks. (Complaint ¶ 17) The Complaint also clearly alleges that by doing so, Sole City has made use of false designation of origin and/or false or misleading representations of fact which will cause confusion and mistake among the consuming public that these branded TROOP goods emanate from, and/or are associated with, Plaintiff. (Complaint ¶¶ 64, 69)

Accordingly, under the rule articulated by the Second Circuit in *Church of Scientology*, 794 F.2d at 44, the heightened potential for consumer confusion as to the source and sponsorship of TROOP branded goods sold by Defendants after the License was terminated is presumed. Thus the First and Second Claims for Relief, as pleaded, are

ICB US (Opp to Motion to Dismiss)

sufficient to withstand Defendants' motion to dismiss as a matter of law[11]. *See also Ryan*, 107 F. Supp. 2d at 380 (plaintiff "clearly" plead a claim for trademark infringement by alleging that "[defendant] intended to suggest, and has falsely suggested, that [defendant's] goods, services or commercial activities were endorsed, sponsored, authorized, or approved by plaintiff in a manner designed to mislead the public."); *Bowmar,* 497 F. Supp. at 955 (continued use of plaintiff's trademark after termination of license in an obvious attempt to enhance marketability creates false impression and constitutes false designation of origin).

**C.    Defendants' Reliance on the Genuine
Goods Doctrine and First Sale Rule is Misplaced**

Ignoring the substantial controlling authority that sales of trademarked products by former licensees are presumptively confusing as to source, Defendants argue that the Complaint fails to state any cause of action under the Lanham Act because the TROOP branded goods that Defendants have continued to sell since termination of the TROOP License are "genuine goods". Defendants' position (asserted without authority) is that since the goods were manufactured by Plaintiff or its "agent" [12], they are genuine goods,

---

[11]    Defendant appears to argue that the Second Claim for Relief for False Designation of Origin is defective for the same reasons they argue that the infringement claim (Claim I) must fail. As shown below, because likelihood confusion is presumed where an ex-licensee continues to use a trademark after license terminated, and the Complaint clearly pleads likelihood of confusion, neither Claim I nor Claim II should be dismissed.

[12]    Defendants' statement that Plaintiff manufactured the goods and actually affixed the TROOP logo to the goods (Defendants' Memo at 8) is inaccurate. The Complaint does not allege this, nor is such the case. All of the goods at issue were manufactured by Plaintiff's designated manufacturer, Full Creative, Ltd, which does business as ICB Asia Co., Ltd. (Complaint ¶ 11) As set forth more fully below, the circumstances under which the goods were manufactured is not relevant, much less dispositive of the genuine goods issue. Even if Plaintiff had manufactured the goods prior to the License termination, the salient fact is that Plaintiff had revoked Defendants' authorization to release the goods into the stream of commerce when it terminated the TROOP License on March 24, 2004. *See e.g. Ryan,* F. Supp. 2d at 382; *Rogers v. HSN Direct Joint Venture*, 1999 U.S. Dist. LEXIS 14392 at *6 (S.D.N.Y. 1999).

and thus, there can be no confusion as to source or sponsorship and therefore no infringement. (Defendants' Memo at 8) Defendants' invocation of the genuine goods doctrine and the first sale rule is unavailing.

### 1.    The Genuine Goods/First Sale Doctrine

The first sale (or "exhaustion") doctrine provides that a downstream retailer of trademarked goods cannot be held liable for Lanham Act violations if the goods at issue are "genuine goods". Whether the goods, in fact, are "genuine" is a conclusion that presupposes that the "first sale" of the goods was authorized. *See, e.g., Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,* 979 F. Supp. 224, 230-231 (S.D.N.Y. 1957) ("Whether the goods are genuine is merely duplicative of the central question: whether [the defendant's] alleged sales, and offers to sell, Claiborne garments were authorized."). "First sale" under the doctrine means the initial release of the goods by the trademark holder into the stream of commerce. *See, e.g.*, *Ryan*, 107 F. Supp. 2d at 382; *Liz Claiborne*, 979 F. Supp. at 230 (*citing Osawa & Co. v. B&H Photo*, 589 F.Supp. 1163, 1173 (S.D.N.Y. 1984)) If the trademark owner did not approve *that* initial sale, the goods cannot be considered genuine as a matter of law and infringement is established. *See Ryan*, 107 F. Supp. 2d at 382; *Liz Claiborne*, 979 F. Supp.at, 230.

Without citation to any authority, Defendants apparently take the position that the transaction between Sole City and the manufacturer was the "first sale" that placed the goods into the stream of commerce. For purposes of the genuine goods/first sale analysis, where trademarked goods are being manufactured by or on behalf of a licensee the goods are released into the stream of commerce until the *licensee* makes its first sale.

19

*See Ryan,* 107 F. Supp. 2d at 383 (defendant ex-licensee "had no right to sell Nolan Ryan products after its license was terminated regardless of when the goods were manufactured, Plaintiff had not authorized the initial sale or released [the goods] into the stream of commerce.  As such, neither the first sale rule nor the genuine goods doctrine serves as a proper defense in the case at bar.")

In this case, as in *Ryan,* Sole City lost the right to release any additional TROOP branded goods into the stream of commerce when the TROOP License was terminated. The district court's conclusion in *Ryan* that the mere fact that the plaintiff had once authorized the defendant to use his name, likeness, and signature, "does not make his endorsement irrevocable for all time," i*d.* at 381, is equally applicable here.  Defendants' one-time license to use the TROOP Trademarks simply does not create in them an unfettered, perpetual right to do so.  Indeed, any other conclusion would effectively neutralize a trademark owner's ability to control the use of its mark in a license or otherwise.  Such was precisely the observation made by the *Bowman* court when faced with an argument similar to the Defendant's argument in this case:  "Carried to its logical conclusion this line of reasoning severely undermines the value of trademark protection and limited licensing agreements."  *Bowman,* 497 F. Supp. at 955

Accordingly, none of the TROOP branded goods sold by Defendants after the TROOP License was terminated were "genuine goods" and the "first sale" defense is unavailable to Defendants in the present case.  *See Liz Claiborne*, 979 F. Supp.at 230; *Ryan*, 107 F. Supp. 2d at 382.

2.    **None of the Cases Cited by Defendants is Apposite**

Defendants cite and discuss three cases to support their reliance on the first sale rule and genuine goods doctrine.  None of these cases is apposite.

In *Sasson Jeans, Inc. v. Sasson Jeans, L.A., Inc.*, 632 F.Supp. 1525 (S.D.N.Y. 1986) (Defendants' Memo at 9, 10) the court held that the sale of Sasson jeans by the defendant former licensee did not constitute trademark infringement because the parties had signed a letter agreement *after* the license was terminated that permitted the defendant to sell those garments already on hand or on order from overseas suppliers. The court rejected the plaintiff's infringement claim finding that it was the authority to continue using the marks granted to the defendant under the letter agreement, and not the original license, that rendered the goods "genuine".   632 F.Supp. at 1529.

No such "continuing imprimatur", *id*., exists in this case to permit Defendants to continue selling TROOP branded goods beyond the license termination date.  On the contrary, Defendants expressly *lost* any sell off rights the License may have contemplated upon its expiration when the License was terminated for cause.

Defendants' reliance on *Byron Lars Duck, Ink. v. San Siro, Inc.*, 1997 U.S. Dist. LEXIS 9398 (S.D.N.Y. 1997) (Defendants' Memo at 9-10) is equally misplaced.  (And somewhat puzzling.)  While Defendants' accurately paraphrase the court's conclusion that sales to unauthorized retailers, without more, does not constitute trademark infringement (Defendants' Memo at 9), that holding related to breaches of the license by the defendant before the license was terminated.  As such, it is simply not relevant to the genuine goods issue.

21

What is relevant in *Byron Lars*, however, is Judge Keenan's, unequivocal (and relevant) holding that the defendants' continued use of the trademark *after termination of the License Agreement* constituted trademark infringement. *Id*. at 28-29 (*citing Baskin-Robbins Ice Cream Co, v. D&L Ice Cream Co.*, 576 F.Supp 1055 (E.D.N.Y. 1983)). Thus *Byron Lars* actually supports the validity of Plaintiff's Lanham Act claims.

*Rogers v. HSN Direct Joint Venture*, *1999 WL 728651 (S.D.N.Y 1999)* (Defendants' Memo at 10-11) no more supports Defendants' position than do *Sasson* or *Byron Lars*. Rather, this case (like *Byron Lars*) actually supports Plaintiff's Complaint.

In *Rogers*, the license of Defendant MGI to manufacture and sell HSN's hair removal product (the "Product") had been terminated. In addition to manufacturing and selling the Product under the license, MGI had purchased quantities of the Product from HSN's authorized distributor (outside the license) to resell at retail. Once the license was terminated, HSN sought to enjoin MGI from continuing to sell *any* of the products, regardless of whether the inventory was manufactured by MGI pursuant to the license or purchased from an authorized distributor. The Court addressed HSN's argument with respect to each category or inventory separately.

With respect to MGI's sales of the goods it had bought from HSN's distributor, the Court held that they were not infringing. The Court reasoned that because the first sale of these goods to the distributor had been authorized by HSN, the goods were genuine. *See* 1999 U.S. Dist. LEXIS 14392 at *7. This holding, which is the portion of the opinion relied on by Defendants (Defendants' Memo at 10), is simply not relevant to this case.

However, the court's holding with respect to MGI's post-termination sale of the inventory that it had manufactured itself pursuant to the license (and in conformance with HSN's quality standards) *is* relevant.  With respect to these goods (which are directly analogous to the TROOP branded product at issue here), the court held that "MGI did not have the right to sell them after termination of the license simply because it had manufactured the goods while the license was still in effect.  The *Rogers* Court thus explained:

> "As a former licensee selling goods without current authorization to do so, MGI's actions raise a strong possibility of consumer confusion, and a presumption of harm to [HSN].  The "genuine product" doctrine does not allow MGI to sell this Product, because it applies only to resales when the original sale was authorized by the trademark holder.

1999 U.S. Dist. LEXIS 14392 at *6.  *See also Ryan,* 107 F.Supp at 383

Similarly, in this case, the mere fact that the TROOP branded goods sold by Defendants since the TROOP License was terminated were manufactured with Plaintiff's consent while the TROOP License was still in effect, without more, does not make the goods "genuine" as a matter of law.

*              *              *

For the forgoing reasons, Defendants' motion should be denied with respect to Claims I and II of the Complaint.

**D.**     **The Third Claim for Relief**
           **States A Claim For False Advertising**

Section 43(a) of the Lanham Act prohibits the use, in connection with any goods or services, of "a false designation of origin, or any false description or representation."

23

15 U.S.C. §1125(a). Section 43(a) is broadly construed to extend to false advertising. *Bowmar,* **Error! Bookmark not defined.** 497 F. Supp. 947.

Under Section 43(a), "in order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market . . . the public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys Cheerleaders,* 604 F.2d at 204-05 (citations omitted). Thus, Section 43(a) "reaches a seller who exaggerates the scope of his patents, thereby creating a false impression that it is the exclusive source of a product, *even though there is no misbranding or mislabeling of the article and no misrepresentation of its inherent attributes*." *Bowmar Instrument Corp.*, 497 F. Supp. at 957 (emphasis added) (citation omitted).

In order to properly plead a cause of action for false advertising under Section 43(a) of the Lanham Act, a plaintiff must allege: (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers. *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). Here, there is no doubt that the allegations in the Complaint satisfy the second prong of establishing false advertising. (*See* Complaint ¶ 69)[13] As discussed above, Defendants' continued use of the TROOP Trademark is presumed to misleads consumers into believing that Plaintiff sponsored the goods. *See, e.g., Church of Scientology,* 794 F. 2d at 44.

---

[13] Paragraph 69 of the Complaint states: "Sole City has made use of false advertising and/or false or misleading representations of fact which will cause confusion and mistake among the consuming public that its articles emanate from, or are associated with, Plaintiff, in violation of 15 U.S.C. § 1125(a). That misconduct was willful, wanton and malicious. Safdeye is personally responsible for that misconduct."

ICB US (Opp to Motion to Dismiss)

Thus, Defendants' motion should be denied with respect to Claim III of the Complaint.

**ARGUMENT**

**II.**

**THIS COURT HAS SUPPLEMENTAL**
**JURISDICTION UNDER 28 USC § 1367(a)**

Defendants argue that the Court should decline to exercise supplemental

jurisdiction under 28 USC § 1367(c)(3) because of Plaintiff's Lanham Act claims, the

three Claims in the Complaint over which this Court has original jurisdiction, should be

dismissed for failure to state a claim. (Defendants' Memo at 13)

However, as set forth above, each of Plaintiff's Lanham Act Claims (Claims I

through III) is sufficiently plead and states a valid claim over which this Court has

exclusive jurisdiction. Accordingly, this Court does have supplemental jurisdiction over

the remaining state law claims in the Complaint and in the interest of judicial economy,

convenience and fairness, such jurisdiction should be exercised. *See 28 U.S.C. §*

*1367(a).*

26

## CONCLUSION

For all the reasons stated herein, it is respectfully requested that the Court deny

Defendants' motion to dismiss the Complaint for failure to state a claim upon which

relief may be granted.

Dated: New York, New York
        July 6, 2004


                                GURSKY & PARTNERS, LLP


                        BY:  _/S/ Esther S. Trakinski___
                             Ira S. Sacks (IS 2861)
                             Esther S. Trakinski (ET 7791)
                             GURSKY & PARTNERS, LLP
                             1350 Broadway, 11th Floor
                             New York, New York 10018
                             (212) 904-1234

                             Attorneys for Plaintiff
                             Innovative Custom Brand Intl., Inc.