IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
INNOVATIVE CUSTOM BRANDS INTL., INC.,    :
                                         :
            Plaintiff,                   :
                                         :
      -against-                          :   Civil Action No. 04 CV 2937 (RJH)
                                         :
                                         :
SOLE CITY, INC., SOLOMON SAFDEYE,        :
ALAN KANDALL, JEFFREY BERNSTEIN and      :
MARC DOLCE,                              :
            Defendants.                  :
---------------------------------------------------------------x


REPLY MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF
MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)


Adam M. Cohen  (AMC-9918)
Dana M. Susman (DMS-5436)
KANE KESSLER, P.C.
1350 Avenue of the Americas
New York, New York  10019
Tel.: (212) 541-6222
Fax.: (212) 245-3009

Attorneys for Defendants
Sole City, Inc. and Solomon Safdeye

208305.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) AS AGAINST ALL DEENDANTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED .................................................................................................. 3

    A.    Plaintiff's Trademark Infringement and False Designation of Origin Claims For Relief are Barred by the Genuine Goods Doctrine ................................................. 3

        1.    There is No "Licensee" Exception to the First Sale Doctrine ..................... 3

            a.    As a Matter of Law, the First Sale Doctrine Applies to This Sale .. 3

            b.    As a Matter of Fact, A First Sale Has Occurred .............................. 6

        2.    Goods Manufactured by Plaintiff's Designated Agent Cannot Lead to Likelihood of Consumer Confusion as to Origin, Sponsorship or Approval ................................................................................ 7

        3.    None of the Cases Cited by Plaintiff Address the Genuine Goods Doctrine .................................................................................................................. 8

    B.    Plaintiff's Falese Advertising Claim For Relief Must Be Dismissed ..................... 9

    C.    The Court Should Not Excercise Supplemental Jurisdiction Over the Fifth, Sixth or Ninth Claims For Relief ................................................................................... 10

CONCLUSION .................................................................................................................... 11

208305.1

# TABLE OF AUTHORITIES

## CASES

Bowmar Instrument Corp. v. Continental Micro ..........................................................................10
497 F. Supp. 947 (S.D.N.Y. 1980)

Church of Scientology Intern. v. Elmira Mission ..........................................................................9
794 F.2d 38 (2d Cir. 1986)

Dallas Cowboys Etc. v. Pussycat Cinemas, Ltd. ....................................................................7, 10
604 F.2d 200 (2d Cir. 1979)

Dynamic Microprocessor v. EKD Computer Sales & Supplies Corp. .........................................8
1997 WL 231496 (E.D.N.Y. April 14, 1997)

El Greco Leather Prods. Co. v. Shoe World, Inc. .......................................................................9n
806 F.2d 392 (2d Cir. 1986)

Geisel v. Poynter Products Inc. ...................................................................................................7n
283 F.Supp 261 (S.D.N.Y. 1968)

H.L. Hayden Co. of NY v. Siemens Medical Systems ......................................................5, 6n, 8
879 F.2d 1005, 1023 (2d Cir. 1989)

Luxotica Group S.p.A v. Bausch & Lomb Incorporated .......................................................4, 5, 6
160 F. Supp. 2d 545 (S.D.N.Y. 2001)

Liz Claiborne Inc. v. Mademoiselle Knitwear, Inc. ...................................................................9n
979 F. Supp. 224 (S.D.N.Y.1997)

Mastercard International, Inc. v. Sprint Communications Co. .....................................................7
1994 WL 97097, 30 U.S.P.Q.2d 1963 (S.D.N.Y. March 23, 1994)

Oleg Cassini, Inc. v. Couture Coordinates, Inc. .........................................................................9n
297 F.Supp 821 (S.D.N.Y. 1969)

Polymer Technology Corporation v. Mimran ................................................................................6
37 F.3d 74, 78 (2d Cir. 1994)

Rogers v. HSN Direct Joint Venture .......................................................................3, 4n, 5, 6n, 8,
1999 U.S. Dist. LEXIS 14392 *  (S.D.N.Y 1992)

Ryan v. Volpone Stamp Company, Inc. .......................................................................................8
107 F. Supp. 2d 369 (S.D.N.Y. 2000)

Warner Bros, Inc. v. Gay Toys, Inc. ...................................................................................................7
658 F.2d 76 (2d Cir. 1981)

**STATUTES**

15 U.S.C. § 1125(a)(1)(A) ..................................................................................................................7

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
INNOVATIVE CUSTOM BRANDS INTL., INC.,      :   Civil Action No. 04 CV 2937 (RJH)
                                           :
                            Plaintiff,     :
                                           :
        -against-                          :
                                           :
SOLE CITY, INC., SOLOMON SAFDEYE,          :
ALAN KANDALL, JEFFREY BERNSTEIN and        :
MARC DOLCE,                                :
                                           :
                            Defendants.    :
------------------------------------------------------------x
```

## REPLY MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendants Sole City, Inc. ("Sole City") and Solomon Safdeye hereby submit their reply memorandum of law in support of their motion to dismiss the Complaint dated April 16, 2004 (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

### PRELIMINARY STATEMENT

Plaintiff does not contest that its designated manufacturing agent fabricated and sold to Sole City all of the goods that form the basis for its trademark and false designation of origin claims. Nor does plaintiff claim that defendants altered the goods in any way. Plaintiff's sole rebuttal to the "genuine goods" defense of defendants is that these goods which plaintiff's authorized agent made and indisputably sold to Sole City were not genuine because the sale of these goods did not constitute a "first sale". Plaintiff contends (without legal support) that when a sale of goods arises in a license context, a "first sale" does not occur until the licensee thereafter sells the goods. In essence, plaintiff is attempting to carve out a "licensee" exception

---

[1] Since the filing of defendants' motion the parties entered into a Stipulation of Dismissal Without Prejudice dated July 1, 2004 pursuant to which defendant Alan Kandall was dismissed from the case.

208305.1

to the first sale doctrine. As we demonstrate below, such an argument is both legally and factually untenable and runs counter to the core of trademark law.

With respect plaintiff's false advertising claim for relief, plaintiff continues to fail to identify *any* statements made by defendants for advertising or promotional purposes, let alone statements that are literally or implicitly false or statements that misrepresent an inherent quality or characteristic of the product. Accordingly, plaintiff's false advertising claim must also be dismissed.

Without any remaining federal claims, this Court should decline to exercise supplemental jurisdiction over the three remaining state law claims for relief.[2] In fact, plaintiff asserts no reason why the Court should not decline to assert supplemental jurisdiction other than to argue that its federal claims should be sustained.

---

[2] The remaining state law claims are the Fifth (breach of license agreement), Sixth (breach of license agreement) and Ninth (unjust enrichment) Claims for Relief. Since the filing of defendants' motion to dismiss the parties entered into a Stipulation of Dismissal Without Prejudice dated July 7, 2004 in which the Seventh (fraud) and Eighth (negligent misrepresentation) Claims for Relief contained in the Complaint were dismissed.

208305.1                                            2

# ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) AS AGAINST ALL DEENDANTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Plaintiff's Trademark Infringement and False Designation of Origin Claims For Relief are Barred by the Genuine Goods Doctrine

#### 1. There is No "Licensee" Exception to the First Sale Doctrine

Plaintiff does not contest that *all* of the goods forming the basis for its Lanham Act claim were manufactured by plaintiff's designated manufacturing agent Full Creative, Ltd., which does business as ICB Asia Co., Ltd. ("ICB Asia") (Pl. Mem. at 18n). Rather, plaintiff contends that, "[f]or purposes of the genuine goods/first sale analysis, where trademarked goods are being manufactured by or on behalf of a licensee the goods are [sic.][3] released into the stream of commerce until the *licensee* makes its first sale." (Plaintiff's Memorandum of Law dated July 6, 2004 ("Pl. Mem. of Law") at 19)  In so arguing, plaintiff has attempted to carve from whole cloth a "licensee" exception to the first sale doctrine to the effect that, only where a license agreement is involved, products that the plaintiff or its agent sell to the licensee are not genuine goods until after the *licensee* sells such products during the term of the license agreement. Plaintiff's entire position boils down to the argument that the sale from ICB Asia to defendant Sole City did not constitute a "first sale" and thus the goods are not genuine. This argument is factually inconsistent, directly contrary to the law of this Circuit and turns basic trademark law on its head.

#### a. As a Matter of Law, the First Sale Doctrine Applies to This Sale

There can be no question that the sale of branded goods from the agent of a trademark holder to a licensee constitutes a "first sale". This point was clearly made in Rogers v.

---

[3] Plaintiff apparently intended to insert the word "not" here.

208305.1                                       3

HSN Direct Joint Venture, 1999 U.S. Dist. LEXIS 14392 * (S.D.N.Y 1992) (Stanton, J.), cited in defendants opening memorandum of law dated May 27, 2004 ("Opening Brief"). In Rogers, the Court was asked to determine whether, *in the context of a trademark license agreement*, a terminated licensee's sales of goods after the license was terminated constituted trademark infringement. In Rogers, there were two types of goods at issue: goods which the plaintiff's authorized distributor manufactured and sold to the terminated licensee and goods which the terminated licensee itself manufactured. Id. at *2  On plaintiff's motion for a preliminary injunction, the Court refused to enjoin sales of the goods sold to the terminated licensee by the plaintiff's authorized distributor because such sales were genuine goods, finding "[s]ince the original sale . . . was authorized, and there is no allegation that [defendant] altered the Product, [defendant] may resell any remaining [authorized-distributor] Products, without infringing [plaintiff's] trademark." Id. at *8  The Court did enjoin sales of goods manufactured by the terminated licensee. Id. at *6  The Court's holding that the resale of goods manufactured by plaintiff's authorized distributor did not constitute a trademark infringement was premised on the fact that the sale to the licensee constituted a "first sale".  Id. at 7 ("courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition. . . . ) (citation omitted)[4]

A similar result was arrived at in Luxotica Group S.p.A v. Bausch & Lomb Incorporated, 160 F. Supp. 2d 545 (S.D.N.Y. 2001). In Luxotica, the parties entered into a

---

[4] Plaintiff distinguishes Rogers by stating, without giving a reason, that the Rogers' court holding with respect to goods manufactured by plaintiff's agent is "simply not relevant to this case." (Pl. Mem. at 22)  Far from being not relevant, this portion of the Rogers holding is directly on point with the facts of this case.

trademark license agreement. The licensee also purchased certain finished inventory from the licensor. The licensor thereafter terminated the license agreement and the licensee initiated a declaratory judgment action seeking a declaration that the license agreement was not properly terminated. The licensor counterclaimed for trademark infringement for sales of goods after termination of the license agreement. On the licensor's motion for a preliminary injunction seeking to enjoin licensee's sales of the finished goods licensee purchased from licensor, the Court, citing Rogers among other cases, denied the motion, finding the sale of the inventory from the licensor to the licensee constituted a first sale and thus the goods bearing the trademarks were genuine goods and could not form the basis for the licensor's trademark infringement action. See Luxotica Group, supra, 160 F. Supp. 2d at 551-52.

    As is demonstrated by these cases, there is no licensee exception to the first sale doctrine, nor should there be. There is no reason to treat this case any differently from a situation where a former distributor is terminated and continues to sell after termination genuine goods it purchased from the plaintiff. In fact, because of the unique provision of the License Agreement in this case requiring Sole City to purchase finished goods from plaintiff or its designated agent (see Complaint ¶13), the relationship between Sole City and plaintiff was actually very much like a manufacturer/distributor relationship. There is no question - - and even plaintiff does not argue - - that a sale from a manufacturer to a distributor constitutes a first sale. See e.g. H.L. Hayden Co. of NY v. Siemens Medical Systems, 879 F.2d 1005, 1023 (2d Cir. 1989) (in a distributor context, Court affirmed the district court's grant of summary judgment dismissing the trademark holder's Lanham Act claims on the grounds that the goods were genuine).

That the sale of the TROOP branded goods by ICB Asia to Sole City is no less a first sale than had the sale not been in a license context is underscored by the fact that the Court in Rogers relied on the Second Circuit Court of Appeal's decision in Polymer Technology Corporation v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994), which did not arise in a license context. Rather, Polymer Technology involved efforts by a third party to resell genuine products that it obtained from an authorized distributor of the plaintiff. Despite the plaintiff's arguments in Polymer Technology as to why the goods were not genuine, the Court found the goods to be genuine and affirmed the lower court's denial of a preliminary injunction.[5]

Thus, plaintiff's statement without authority that ICB Asia's sale to Sole City does not constitute a first sale is plainly wrong as a matter of law.

### b.    As a Matter of Fact, A First Sale Has Occurred

Plaintiff's argument that the sale from ICB Asia to Sole City does not constitute a first sale also cannot be sustained in light of the fact that *ICB Asia* obviously believes that its sale to Sole City constituted a sale. In fact, ICB Asia is suing Sole City in the Companion Case to enforce the terms of the sale and receive payment. Plaintiff cannot have its cake and eat it too; it cannot on the one hand have its agent sue to enforce the terms of a sale and then deny the fact that a sale has occurred.

### 2.    Goods Manufactured by Plaintiff's Designated Agent Cannot Lead to Likelihood of Consumer Confusion as to Origin, Sponsorship or Approval

It is clear from the cases cited above that the relevant question is not whether the dispute arises in the context of a terminated license or some other context but *who* manufactures the disputed goods. The importance of H.L. Hayden, Polymer Technology, Luxotica and Rogers is that they show precisely where the line should be drawn. As these decisions hold, where

---

[5] Defendants cited H.L Hayden and Polymer Technology in their Opening Brief. Plaintiff failed to mention, let alone distinguish, either of these cases in its brief.

208305.1                                6

goods are manufactured by a trademark holder or its authorized agent and sold into the stream of commerce, there is a first sale and the genuine goods doctrine applies; conversely, where the goods are manufactured by the terminated distributor or licensee, the genuine goods doctrine may not apply. Here, of course, the goods were manufactured by the designated agent of the trademark holder and thus the genuine goods doctrine applies.

Moreover, there is good reason that the inquiry should focus on who manufactured the goods. It is a fundamental tenet of trademark law that an infringement only occurs where there is likelihood of consumer confusion as to origin, sponsorship or approval *of the goods*. (See Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); cases cited at Opening Brief 7-8). Since goods manufactured by a trademark holder or its agent do in fact originate with and are sponsored and approved by the trademark holder, such goods cannot form the basis for a trademark infringement claim. Where the trademark holder itself or through its designated agent has fabricated the goods, no confusion as to origin, approval or sponsorship is possible and therefore no likelihood of confusion is possible.

Defendants do not take issue with plaintiff's statement of the law announced in Dallas Cowboys Etc. v. Pussycat Cinemas, Ltd., 604 F.2d 200 (2d Cir. 1979), Warner Bros, Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981), Mastercard International, Inc. v. Sprint Communications Co., 1994 WL 97097, 30 U.S.P.Q.2d 1963 (S.D.N.Y. March 23, 1994 (Martin, J.) and elsewhere that a trademark infringement will occur where goods are likely to give the false impression that they are sponsored or "vouched for" by another party.[6] However, this cannot be true, and none of these cases involved a situation, where the goods were manufactured by the trademark holder or its designated agent. Where the goods themselves do originate from and are sponsored and authorized by the trademark holder, no trademark infringement can occur.

---

[6] Geisel v. Poynter Products Inc., 283 F.Supp 261 (S.D.N.Y. 1968) also stands for this proposition.

208305.1                                                     7

3.  **None of the Cases Cited by Plaintiff Address the Genuine Goods Doctrine**

Plaintiff devotes approximately 4 pages of its brief to the unremarkable proposition that sale by a terminated licensee of branded goods after the termination of the license agreement constitutes trademark infringement. (See Pl. Mem. of Law at 14-18) While this may be true, this does not apply to sales of genuine goods for which there has been a lawful first sale. (See cases cited above at Point A.1) <u>In fact, not one of the license cases cited by plaintiff involved the first sale doctrine or genuine goods</u>. In each of the license cases cited by plaintiff, the defendant/licensee manufactured the goods itself, and thus the goods had not been the subject of an authorized first sale and could not be deemed to have been sponsored by the trademark holder.

For instance, in <u>Ryan</u> v. <u>Volpone Stamp Company, Inc.</u>, 107 F. Supp. 2d 369 (S.D.N.Y. 2000) (Pl. Mem. of Law at 15), a case heavily relied upon by plaintiff, the defendant manufactured the goods and thus could not rely on the argument that goods were authorized or sponsored by the trademark holder. See <u>Ryan</u>, supra, 107 F. Supp. 2d at 374-75 ("plaintiff alleges that [defendant] disregarded the termination letter <u>and continued to manufacture and distribute Nolan Ryan merchandise</u>") (emphasis added)   In fact, <u>Ryan</u> expressly distinguished <u>Rogers</u>, <u>H.L. Hayden</u> and <u>Polymer Technology</u> on the grounds that in <u>Ryan</u> no authorized first sale had occurred.

Similarly, in <u>Dynamic Microprocessor</u> v. <u>EKD Computer Sales & Supplies Corp.</u>, 1997 WL 231496 (E.D.N.Y. April 14, 1997) (Block, J.)( Pl. Mem. of Law at 16), the terminated licensee continued itself to make copies of the plaintiff's product (computer software) after termination. In fact, the <u>Dynamic</u> Court found that defendant did not "produce any admissible evidence that the copies of the [software] sold to [customers] were copies [defendant] bought

directly from [plaintiff] for resale". Id. at 18. **The clear import of this finding is that if defendant had bought these copies of the software from plaintiff, defendant would have been able to resell them under the first sale and genuine goods doctrines.**

Church of Scientology Intern. v. Elmira Mission, 794 F.2d 38 (2d Cir. 1986) (Pl. Mem. of Law at 14-15) involved the use by a terminated licensee of the plaintiff's trademarks in connection with the operation of a church mission. There were no goods involved, let alone goods manufactured by the trademark owner.[7]

### B.    Plaintiff's False Advertising Claim For Relief Must Be Dismissed

As we demonstrated in the Opening Brief, plaintiff has failed adequately to plead a cause of action for false advertising under Section 43(a) of the Lanham Act because plaintiff has failed to plead, as it must, that defendants made any commercial advertising or promotion statements relating to the trademarked goods, let alone statements that are literally or implicitly false or statements that misrepresent an inherent quality or characteristic of the product. (See Opening Brief at 11-12)

In its brief, plaintiff continues to confuse Section 43(a)(1)(A) of the Lanham Act, which is the false designation of origin section, with Section 43(a)(1)(B) of the Lanham Act, which is the false advertising section. Plaintiff alleges in its complaint at paragraph 69 and states in its Memorandum of Law at page 24 that "Defendants' continued use of the TROOP trademark is presumed to mislead consumers into believing that Plaintiff sponsored the goods." (Pl. Mem. of Law at 24) Although this statement is relevant to a false designation of origin claim under

---

[7] Similarly, in Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F.Supp 821 (S.D.N.Y. 1969) (Pl. Mem. of Law at 16), the terminated licensee manufactured the goods; in fact, the reason for the termination was that the defendant failed to comply with the quality control and approval provisions of the license agreement. El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392 (2d Cir. 1986) (Pl. Mem. of Law at 16-17) and Liz Claiborne Inc. v. Mademoiselle Knitwear, Inc., 979 F. Supp. 224 (S.D.N.Y.1997) (Pl. Mem. of Law at 19) both involved product fabricated by the defendant manufacturers that was not approved or quality controlled by the trademark holders, which is not at all relevant here. Neither of these cases involved situations like here where the trademark holder or its agent manufactured the goods.

Section 43(a)(1)(A),[8] it does not state a claim for false advertising under Section 43(a)(1)(B). (See cases cited at Opening Brief at pages 11-12)

A false advertising claim under the Lanham Act is not asserted simply because the allegedly infringing use of a trademark is contained in advertising materials. A false advertising claim must involve statements for advertising or promotional purposes that misrepresent an inherent quality or characteristic of the product. (See Opening Brief at 11-12)

None of the cases cited by plaintiff in support of its false advertising claims even involved false advertising claims. Neither Bowmar Instrument Corp. v. Continental Micro, 497 F. Supp. 947 (S.D.N.Y. 1980) (Pl. Mem. of Law at 24), Church of Scientology Intern. v. Elmira Mission, supra, 794 F.2d 38 (Pl. Mem. of Law at 24) nor Dallas Cowboys Etc. v. Pussycat Cinemas, Ltd., supra, 604 F.2d 200 (Pl. Mem. of Law at 24) involved false advertising claims. In each of these cases, the plaintiff asserted only claims for trademark infringement and false designation of origin, not false advertising.

Accordingly, the Third Claim for Relief should be dismissed.

C.  **The Court Should Not Exercise Supplemental Jurisdiction Over The Fifth, Sixth or Ninth Claims For Relief**

Plaintiff does not rebut defendants' argument, and accordingly concedes, that if all of the federal claims are dismissed, this Court should not exercise its supplemental jurisdiction over the remaining three state law claims. The Fifth, Sixth and Ninth Claims for Relief should be dismissed for the reasons stated in the Opening Brief at 13-14.

---

[8] Although, such statement is wrong as a matter of law because the goods are genuine, as demonstrated above.

208305.1                              10

## CONCLUSION

For the foregoing reasons, all claims for relief contained in the Complaint should be dismissed.

Dated: New York, New York
       August 4, 2004

                                      Respectfully submitted,

                                      **KANE KESSLER, P.C.**

                                      By: _____
                                           Adam M. Cohen (AMC-9918)
                                           Dana M. Susman (DMS-5436)
                                      Attorneys for defendants Sole City, Inc. and
                                      Solomon Safdeye
                                      1350 Avenue of the Americas
                                      New York, NY  10019
                                      (212) 541-6222

### AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK     )
                      )ss.:
COUNTY OF NEW YORK   )

       I, **Nellya Dym**, being duly sworn, say:

       I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

       On August 5, 2004, I served the within:

**REPLY MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

by sending a true copy thereof by *Federal Express* under the exclusive care and custody of federal express mail addressed to the following:

*Gursky & Partners, LLP*
Attorneys for Plaintiff
1350 Broadway, 11th Floor
New York, New York 10018

                                       _____
                                            Nellya Dym

Sworn to before me this
5th day of August, 2004.

_____
Notary Public

CARA M. BROWNELL
Notary Public, State of New York
No. 01BR6003836
Qualified in Kings County
Commission Expires March 9, 2006